UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MANAV KHANNA,** *et al.* <br><br> Plaintiffs, <br><br> v. <br><br> **ALEJANDRO MAYORKAS,** *et al.* <br><br> Defendants. <br><br> ——— <br><br> **PRADEEP KUMAR PEDDI,** *et al.* <br><br> Plaintiffs, <br><br> v. <br><br> **ALEJANDRO MAYORKAS,** *et al.* <br><br> Defendants. | Civ. No. 21-8712 (KM) <br><br> Civ. No. 21-8715 (KM) <br><br> **OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

The movants in these Temporary Restraining Order ("TRO") Applications (8712 Action DE 13; 8715 Action DE 12)[1] consist of a subgroup of plaintiffs in

---

[1] Citations to the record will be abbreviated as follows. Citations to page numbers refer to the page numbers assigned through the Electronic Court Filing system, unless otherwise indicated:

"DE" = Docket entry number in this case.

"8712 Action" = *Khanna, et al. v. Mayorkas, et al.*, Civ. No. 21-8712 (KM)

"8715 Action" = *Peddi, et al. v. Mayorkas, et al.*, Civ. No. 21-8715 (KM)

"TRO Brief" = Consolidated Brief in Support of Movant's Emergency Motion for

1

two related actions: *Khanna, et al. v. Mayorkas, et al.*, Civ. No. 21-8712 (KM) ("8712 Action") and *Peddi, et al. v. Mayorkas, et al.*, Civ. No. 21-8715 (KM) ("8715 Action"). Those actions have been consolidated for argument for purposes of this TRO application, and the Court will enter one Opinion and Order in each docket. As the arguments are identical, for ease of reference, I will refer to the briefing filed in the 8715 Action.

The movants seek a Writ of Mandamus to compel defendant United States Citizenship and Immigration Services ("USCIS") to adjudicate their Forms I-485, Application to Register Permanent Resident or Adjust Status, before 11:59 P.M. on June 30, 2021. For the reasons provided herein, I will deny the movants' request for emergent relief.

## I. Summary

On April 8, 2021, plaintiffs in these related matters initiated an action to compel adjudication on their Forms I-485 on the basis of each plaintiffs' previously-approved Forms I-526, Immigrant Petition by Alien Entrepreneur. (8712 Action DE 1 at 2; 8715 Action DE 1 at 2.) As alleged in the complaints, all plaintiffs have invested at least $500,000 through the EB-5 Regional Center Program in order to obtain green cards for themselves and their families through the EB-5 visa program. (*Id.*)

Now, the plaintiffs, or some of them, seek a TRO compelling adjudication on their Forms 1-485 by June 30, 2021, the date the Regional Center Program is set to expire. (TRO Brief at 5.) If the Program is not renewed, the movants contend, then they "will lose their eligibility to obtain a green card through

---

Temporary Restraining Order (8715 Action DE 12)

"Opp." = Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for a Temporary Restraining Order (8715 Action DE 16)

"Reply" = Movants' Reply to Defendants' Opposition to Their Motion For Temporary Restraining Order (8715 Action DE 21)

their investments." (*Id.* at 11.) I ordered expedited briefing and held a hearing, at which neither side offered testimony, yesterday afternoon, June 24, 2021. Given the impending deadline, I have issued this opinion and order on an expedited basis.

### a. The EB-5 Regional Center Program

In 1990, Congress amended the Immigration and Nationality Act ("INA") of 1965 to allocate, *inter alia,* a number of immigrant visas ("not to exceed 7.1 percent of such worldwide level") per year "to qualified immigrants seeking to enter the United States for the purpose of engaging in a new commercial enterprise." 8 U.S.C. § 1153(b)(5). That allotment is also known as the "fifth preference" in the "employment-based visa category," or the "EB-5" classification. *See U.S. Sec. & Exch. Comm'n v. Hui Feng*, 935 F.3d 721, 725 (9th Cir. 2019), *cert. denied,* 141 S. Ct. 1387 (2021) ("By statute, the Immigrant Investor Program is the fifth preference in the employment-based visa category, which gave rise to the nickname 'EB-5.'"). Pursuant to the Regional Center Program, also called the Immigrant Investor Program, foreign nationals may be eligible for an EB-5 immigration visa if (1) they have invested, or are "actively in the process of investing," in a new commercial enterprise, and (2) the investment results in the creation of at least ten jobs for workers in the United States.[2] 8 U.S.C. § 1153(b)(5)(A)-(D); 8 C.F.R. § 204.6(a)-(j).

Prior to the regulatory amendments of November 21, 2019, noncitizens who participated in the EB-5 program were required to invest $1 million in a new commercial enterprise, or at least $500,000 in a new commercial enterprise in a "targeted employment area."[3] 8 U.S.C. § 1153(b)(5)(C); 3 C.F.R.

---

[2] Specifically, the investment must "benefit the United States economy and create full-time employment for not fewer than 10 United States citizens or aliens lawfully admitted for permanent residence or other immigrants lawfully authorized to be employed in the United States (other than the immigrant and the immigrant's spouse, sons, or daughters)." 8 U.S.C. § 1153(b)(5)(A)(ii).

[3] "Targeted employment area" is defined as "at the time of the investment, a rural area or an area which has experienced high unemployment (of at least 150 percent of the national average rate)." 8 U.S.C. § 1153(b)(5)(B)(ii).

§ 204.6(f) (2019); *see also* Dep't of Homeland Security, *EB-5 Immigrant Investor Program Modernization*, 84 FR 35750-01 (July 24, 2019) (explaining the increase in the minimum investment amount in targeted employment areas from $500,000 to $900,000).

The process for becoming a lawful permanent resident ("LPR") through the EB-5 Program is as follows. First, the noncitizen investor must file a Form I-526, Immigrant Petition by Alien Entrepreneur. Upon approval, if the investor is present in the United States, he or she files a Form I-485.[4] If the investor is granted adjustment of status, then he or she is admitted to the United States and is given a conditional Form I-551, or "green card," for a period of two years. After that two year period, the investor then may become an LPR without conditions by filing a Form I-829 in accordance with statutory and regulatory guidelines and upon a showing that he or she satisfied the investment and job-creation requirements of 8 U.S.C. § 1153(b). *See generally* 8 U.S.C. § 1153; 8 U.S.C. § 1201; 8 U.S.C. § 1186b; 8 C.F.R. § 204.6; 8 C.F.R. § 216.6. The Attorney General shall terminate the permanent resident status of the noncitizen investor (and his or her spouse and/or child) if

> before the second anniversary of the alien's obtaining the status of lawful admission for permanent residence, [the Attorney General determines] that--
>
>> (A) the investment in the commercial enterprise was intended solely as a means of evading the immigration laws of the United States,
>>
>> (B)(i) the alien did not invest, or was not actively in the process of investing, the requisite capital; or
>>
>> (ii) the alien was not sustaining the actions described in clause (i) throughout the period of the alien's residence in the United States; or
>>
>> (C) the alien was otherwise not conforming to the requirements of section 1153(b)(5) of this title,

---

[4] If the investor lives abroad, he or she would file a Form DS-260, Application for Immigrant Visa and Alien Registration.

4

8 U.S.C. § 1186b(b)(1); *see also Tingzi Wang v. United States Citizenship & Immigr. Servs.*, 375 F. Supp. 3d 22, 26–27 (D.D.C. 2019) ("[I]f a petitioner fails to meet these requirements, or neglects to file an I-829 petition, USCIS must terminate the petitioner's conditional immigrant visa.").

Notable for the present purposes, the approval of a visa petition, such as the I-526 petition, "vests no rights in the beneficiary of the petition." *Matter of Ho*, 19 I. & N. Dec. 582, 589 (BIA 1988). Instead, "[a]pproval of a visa petition is but a preliminary step in the visa or adjustment of status application process, and the beneficiary is not, by mere approval of the petition, entitled to an immigrant visa or to adjustment of status." *Id.* And, "[s]uccessful adjudication and approval of an I-526 petition makes a petitioner eligible for a visa, but does not automatically provide a visa." *Nohria v. Renaud*, No. 20-2085, 2021 WL 950511, at *2 (D.D.C. Mar. 14, 2021).

The INA imposes yearly limits to the total number of immigrant visits issued each year. *See* 8 U.S.C. § 1151. As stated, EB-5 visas are capped at 7.1 percent of all employment-based visas. 8 U.S.C. § 1153(b)(5)(A). Nevertheless, "'not less than three thousand' EB-5 visas are to be afforded to foreign investors investing in 'targeted investment areas' per fiscal year." *Nohria*, 2021 WL 950511 at *2 (quoting 8 U.S.C. § 1153(b)). Within that framework,

> the State Department "allocate[s] immigrant visa numbers," *see* 22 C.F.R. § 42.51(b), and when the demand for visas is higher than the supply of visas for a given year in any given category, a visa queue forms. Visa petitions in that queue are organized by their "priority date," typically the date the petition was filed. *See* 8 U.S.C. § 1153(e); 22 C.F.R. § 42.54. A petitioner in the queue then becomes eligible for a permanent resident visa, barring any other indications of ineligibility, when the listed priority date for petitioner's country of origin and category printed in most recent monthly Visa Bulletin, published by the State Department, *see,* e.g., U.S. DEP'T OF STATE, VISA BULL. FOR SEPTEMBER 2020 45 (Sept. 2000), https://travel.state.gov/content/travel/en/legal/visa-law0/visa-bulletin/2020/visa-bulletin-for-september-2020.html (last accessed Mar. 14, 2021), falls on a date later than petitioner's

priority date, *id.* At that point, a visa is considered available to that petitioner. *See id.*

*Id.*

The Regional Center Program was initially established as a five-year pilot program in 1992. DEPARTMENTS OF COMMERCE, JUSTICE, AND STATE, THE JUDICIARY, AND RELATED AGENCIES APPROPRIATIONS ACT, 1993., PL 102–395, October 6, 1992, 106 Stat 1828. However, the program has been extended more than thirty times since then. *Nadhar v. Renaud*, No. 21-00275, 2021 WL 2401398, at *4 (D. Ariz. June 11, 2021). Most recently, the EB-5 Regional Center Program has been extended through June 30, 2021. Thus, if not reauthorized by Congress, the program is set to terminate on June 30, 2021 (the "sunset date"). On March 18, 2021, S.831 was introduced to provide for the reauthorization of the program through September 30, 2026.[5]

### b. Movants Participation in the EB-Program

As alleged, each movant has invested $500,000 through the EB-5 Regional Center Program[6] and each of the movant's completed I-526 petitions have been approved. (8712 Action DE 1 at 2; 8715 Action DE 1 at 2.) Each movant has also filed, and is awaiting adjudication of, a Form 1-485. (*Id.*) The dates that each family submitted their Form 1-485 ranges from March to December of 2020. (*See* 8712 Action DE 1; 8715 Action DE 1.) Thus, most movants have been waiting for a decision for over a year. (*See id.*; TRO Brief at 9-10.)

The movants now seek a TRO compelling USCIS to adjudicate their Forms 1-485 before the EB-5 Program terminates on June 30, 2021.

---

[5] Text of the bill available at: https://www.congress.gov/bill/117th-congress/senate-bill/831/text?r=70&s=1 (last visited June 25, 2021). A similar bill was introduced in the House on April 28. 2021. *See* https://www.congress.gov/bill/117th-congress/house-bill/2901/text?r=1&s=1 (last visited June 25, 2021).

[6] Presumably, $500,000 was sufficient at the time of the movants' investment. Defendants do not contend otherwise.

## II. Discussion

### a. Legal Standard

To obtain a temporary restraining order or a preliminary injunction, a petitioner must provide a "threshold" showing of two critical factors: (1) a likelihood of success on the merits of his claim; and (2) that he is "more likely than not to suffer irreparable harm in the absence of preliminary relief." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). A likelihood of success on the merits requires "a showing significantly better than negligible but not necessarily more likely than not." *See id.* Additionally, "[h]ow strong a claim on the merits is enough depends on the balance of the harms: the more net harm an injunction can prevent, the weaker the plaintiff's claim on the merits can be while still supporting some preliminary relief." *Id.* at 178 (quoting *Hoosier Energy Rural Elec. Coop., Inc. v. John Hancock Life Ins. Co.*, 582 F.3d 721, 725 (7th Cir. 2009)). If these two "gateway factors" are met, then the Court considers the remaining two factors which aim to balance the equities of the parties: (3) "the possibility of harm to other interested persons from the grant or denial of the injunction," and (4) "the public interest." *Id.* at 176 (quoting *Del. River Port Auth. v. Transamerican Trailer Transport, Inc.*, 501 F.2d 917, 919-20 (3d Cir. 1974)). The Court considers, "in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Id.* at 179.

### b. Likelihood of success on the merits

The movants seek a writ of mandamus compelling USCIS to adjudicate their Forms 1-485 before 11:59 P.M. on June 30, 2021.

A writ of mandamus compelling agency action is an extraordinary remedy that will issue only on a showing of a clear and indisputable entitlement:

> Mandamus is a drastic remedy that is granted only in extraordinary cases. *In re Diet Drugs Prods. Liab. Litig.*, 418 F.3d 372, 378 (3d Cir. 2005). Generally, mandamus is a "means 'to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its

> duty to do so.'" *United States v. Christian*, 660 F.2d 892, 893 (3d Cir. 1981) (quoting *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26, 63 S. Ct. 938, 87 L.Ed. 1185 (1943)). To demonstrate that mandamus is appropriate, a petitioner must establish that he has "no other adequate means" to obtain the relief requested, and that he has a "clear and indisputable" right to issuance of the writ. *Madden v. Myers*, 102 F.3d 74, 79 (3d Cir. 1996).

*In re Mujaddid*, 762 F. App'x 124, 125–26, 2019 WL 360052, at *1 (3d Cir. Jan. 29, 2019).

The movants submit that mandamus is an appropriate remedy here given USCIS's unreasonable delay in adjudicating their Forms I-485. (TRO Brief at 11.) Defendants submit, *inter alia*, this there is no likelihood of success on the merits because this Court lacks subject matter jurisdiction to compel USCIS to adjudicate the applications within a certain timeline. (Opp. at 28.) I agree.

    *i.    Relief is unavailable under 28 U.S.C. § 1361*

District courts "have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C.A. § 1361. The United States Court of Appeals for the Third Circuit has explained:

> In order for mandamus to issue, a plaintiff must allege that an officer of the Government owes him a legal duty which is a specific, plain ministerial act "devoid of the exercise of judgment or discretion." An act is ministerial only when its performance is positively commanded and so plainly prescribed as to be free from doubt.

*Harmon Cove Condo. Ass'n, Inc. v. Marsh*, 815 F.2d 949, 951 (3d Cir. 1987) (alteration in original) (quoting *Richardson v. United States*, 465 F.2d 844, 849 (3rd Cir.1972) (en banc), *rev'd on other grounds*, 418 U.S. 166, 94 S.Ct. 2940 (1974)). Thus, mandamus relief is appropriate only "to compel the performance of 'a clear nondiscretionary duty.'" *Pittston Coal Grp. v. Sebben*, 488 U.S. 105, 121, 109 S. Ct. 414, 424, 102 L. Ed. 2d 408 (1988) (quoting *Heckler v. Ringer*, 466 U.S. 602, 616 (1984)).

Defendants submit that the Court lacks jurisdiction to compel USCIS to adjudicate the movant's Forms I-485 by June 30, 2021 under 28 U.S.C. § 1361 because there is no statutory or regulatory time period specified within which an I-485 application must be adjudicated. (Opp. at 29.) In other words, they contend that the timeframe within which to adjudicate the movants' petition is discretionary. (*Id.*)

8 U.S.C. § 1255(a) establishes the Attorney General's authority to adjust the status of a noncitizen to that of a permanent resident:

> The status of an alien who was inspected and admitted or paroled into the United States . . . *may* be adjusted by the Attorney General, *in his discretion* and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

(Emphasis added). The authority to adjudicate applications for adjustment of status was transferred to the Secretary of Homeland Security and USCIS through 6 U.S.C. §§ 271(b)(5) and 557.

As is clear by the language of 8 U.S.C. § 1255(a), the ultimate decision whether to grant adjustment of status is committed to agency discretion. *See, e.g., U.S. ex rel. Vaso v. Chertoff*, 369 F. App'x 395, 400 (3d Cir. 2010). Therefore, such decision is unreviewable. *Id.*; 8 U.S.C. § 1252(a)(2)(B) (precluding judicial review of (i) any judgment regarding the granting of relied under, *inter alia*, 8 U.S.C. § 1255or (ii) of decisions or actions of the Attorney General or the Secretary of Homeland Security "the authority for which is specified . . . to be in the discretion of the Attorney General or the Secretary of Homeland Security.").

Here, however, movants do not seek to compel USCIS to *grant* their pending applications. Instead, they seek to compel the agency to *adjudicate* their applications within a certain time frame, *i.e.,* by the sunset date of June 30, 2021.

9

In *Vaso*, a noncitizen plaintiff sought, *inter alia*, a writ of mandamus to compel USCIS to adjudicate his applications for adjustment of status. 369 F. App'x at 399. In an unpublished decision, the Third Circuit held that "adjudication of [plaintiff's] applications was not a ministerial act devoid of the exercise of judgment or discretion," and, therefore, relief was not available through a writ of mandamus. *Id.* at 400. Multiple courts in this district have also held that USCIS's action or inaction in adjudicating visa petitions is unreviewable.[7]

In this regard, Judge Chesler's decision in *Qiu v. Chertoff*, 486 F. Supp. 2d 412 (D.N.J. 2007) is particularly persuasive. In *Qiu*, the issue before the district court was "whether it has jurisdiction over an action seeking to compel

---

[7] *See, e.g., Serrano v. Quarantillo*, No. 06-05221, 2007 WL 1101434, at *2 (D.N.J. Apr. 9, 2007) ("Because 8 U.S.C. § 1255 provides that an alien's status may be adjusted by the Attorney General in his/her discretion, this court does not have jurisdiction to review his actions or inactions relating to Plaintiff's adjustment of status. Additionally, because Section 1252(a)(2)(B) specifically precludes judicial review notwithstanding the mandamus statutes or any other provision of law, Plaintiff's mandamus and APA claims are barred."); *Qiu v. Chertoff*, 486 F. Supp. 2d 412, 420 (D.N.J. 2007) ("Neither the statute nor the regulations prescribe a ministerial duty to adjudicate an adjustment of status application which is "so plainly prescribed as to be free from doubt." As Defendants have no clear duty to perform a ministerial act for Plaintiff, the Court lacks mandamus jurisdiction under 28 U.S.C. § 1361.") (internal citations omitted); *Shah v. Chertoff*, No. 07-874, 2007 WL 2084891, at *4 (D.N.J. July 18, 2007) (holding that 8 U.S.C. 1252 "prohibits the Court from reviewing the pace at which the Attorney General or USCIS adjudicates a particular I–485 application."); *Li v. Gonzales*, No. 06-5911, 2007 WL 1303000, *6 (D.N.J. May 3, 2007) (holding that district courts lack subject matter jurisdiction because USCIS has the discretion to withhold adjudication of I-485 applications under 8 U.S.C. 1255(a) making adjudication a discretionary duty); *Jin v. Chertoff*, No. 07-1145, 2007 WL 1963143, *2 (D.N.J. June 29, 2007) (holding that 8 U.S.C. § 1252(a)(2)(B) specifically precludes judicial review of the Attorney General's actions or inactions relating to I-495 applications); *Zhang v. District Director, USCIS*, No. 07-362, 2007 WL 1797655, *2 (D.N.J. June 20, 2007) (finding no subject matter because the statute fails to indicate a time frame for adjustments of status, indicating that Congress did not intend to limit the discretion of immigration officials by specifying a time period in which they must act); *Tao v. Mueller*, No. CIV. 07-804, 2007 WL 2459423, at *3 (D.N.J. Aug. 23, 2007) ("The Attorney General is vested with the sole authority as to when and how to adjudicate an I-485 application.").

[USCIS] to adjudicate an application for adjustment to lawful permanent residence status that has been pending for almost three years." 486 F. Supp. 2d at 414. There, the plaintiff had submitted a Form 1-485, but her application had not been adjudicated because USCIS and the Federal Bureau of Investigation ("FBI") had not completed certain background checks. *Id.* The plaintiff sought, *inter alia,* to compel adjudication of her pending application. *Id.* The *Qiu* court dismissed the action for lack of subject matter jurisdiction. *Id.* at 420.

First, the court noted that "[t]here is no statutory or regulatory provision which specifies a time frame for adjudication of adjustment of status applications." *Id.* at 416. Additionally, the court was unpersuaded by cases from other districts holding that USCIS has a non-discretionary duty to adjudicate adjustment of status applications. *Id.* at 417. The court reasoned that "other sections of the United States Code, which empower the Attorney General or the Secretary of Homeland Security to adjudicate an application, are accompanied both by a statutory time period for adjudication and an explicit provision granting applicants a right to judicial review." *Id.* However, "there is no similar provision establishing a specific time frame for adjudication, nor an accompanying provision conferring a right to judicial review," with respect to applications for adjustment of status. *Id.* at 418. Because the Code provides for a timeline with respect to other applications, the absence of such timeline for adjustment of status applications demonstrates that "Congress did not intend to limit the discretion of immigration officials by specifying a certain time period within which they must act." *Id.*

The *Qiu* court also noted that the other courts that found a non-discretionary duty to adjudicate adjustment of status applications pointed, as do the movants here, to the language of 8 C.F.R. § 245.2(a)(5)(i): "The applicant shall be notified of the decision of the director and, if the application is denied, the reasons for the denial." *Id.* at 417. The *Qiu* court noted that "[t]he phrases 'shall be notified,' 'shall record,' and 'shall be interviewed' do not mean the

same thing as 'shall adjudicate.'" *Id.* at 418. In other words, that regulation delineates notice requirements *after* a decision has been made but places no requirement on the agency to adjudicate the applications within a specific time frame. *Id.* at 419.

Additionally, the *Qiu* court looked to 8 C.F.R. § 103.2(b)(18), which directly authorizes the withholding of adjudication while applications are being investigated. *Id.* at 418-19. In pertinent part, the regulation provides that "an immigration officer *'may'* withhold adjudication every six months if he or she *'determines it is necessary* to continue to withhold adjudication pending completion of the investigation.'" *Id.* at 419 (quoting 8 C.F.R. § 103.2(b)(18)). The court noted that "the terms of the regulation clearly contemplate that certain applications may require lengthy investigations." *Id.* The movants submit that the *Qiu* court's interpretation of 8 C.F.R. § 103.2(b)(18) renders that regulation superfluous because if, they contend, the decisions whether or when to adjudicate are discretionary, then it would not be necessary to create a regulation allowing for the withholding of adjudication. (Reply at 14-15.) I am unconvinced. *Qiu* involved an application that was being actively investigated, and the regulation is limited to that context. It discusses withholding in the context of an investigation and delineates the circumstances for which such applications can be held in abeyance *pending investigation. See* 8 C.F.R. § 103.2(b)(18). Thus, the regulation acknowledges the agency's general discretion to withhold applications and discusses certain guidelines with respect to withholding when it is done pending an investigation.

Importantly, the *Qiu* court also reasoned that 8 U.S.C. § 1255 places three specific limitations on the Attorney General's discretion, none of which require him to adjudicate applications in the first place or to do so within a certain time. 486 F. Supp. 2d at 419-20 ("The Attorney General may exercise his discretion if '(1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately

available to him at the time his application is filed.'") (quoting 8 U.S.C. § 1255(a)).

Finally, the *Qiu* court opined that "it is ill-advised for courts to interfere with otherwise unreviewable agency decisions." *Id.* at 420. Moreover, where, as here, "the Court lacks power to review the ultimate agency decision and the agency's cases are backlogged, granting the writ to compel adjudication would do nothing more than shuffle to the front of the line those I–485 applicants canny enough to file a complaint in federal district court."

For the reasons identified in *Qiu*, I find the Court lacks subject matter jurisdiction under 28 U.S.C. § 1361 to review the timeliness of USCIS's adjudication of pending applications and to compel the agency to adjudicate an application within a certain time period. Congress has granted the Attorney General with the discretion to adjust the status of noncitizens if certain requirements are met. *See* 8 U.S.C. § 1255(a). None of those requirements mandate that the AG adjudicate pending applications, let alone do so within a certain timeframe. Therefore, the movants cannot show that defendants owe to them a specific, ministerial duty to adjudicate their pending applications that is devoid of discretion. Therefore, mandamus is not available. *See Harmon*, 815 F.2d at 951.

> ii. *Relief is also unavailable under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et. seq.*

Because, as established above, the Attorney General does not have a non-discretionary obligation to adjudicate the movant's pending applications within a certain timeframe, the APA does not grant the court jurisdiction to enter such an order. Under the APA, "when an agency is compelled by law to act within a certain time period . . . a court can compel the agency to act." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 65 (2004). However, "the APA does not apply to agency action that is committed by law to the discretion of the agency." *Qiu*, 486 F. Supp. 2d at 421 (citing 5 U.S.C. § 701(a)(2); *see also* 5 U.S.C. § 551 (defining "agency action" as "the whole or a part of an agency

rule, order, license, sanction, relief, or the equivalent or denial thereof, *or failure to act*") (emphasis added). Because the decisions whether and when to adjudicate the movants' I-485 application are within the agency's discretion, the APA does not apply. *See Qiu*, 486 F. Supp. 2d at 421.

For the reasons provided above, I find that this Court lacks subject matter jurisdiction to grant the relief requested. Therefore, the movants cannot demonstrate a likelihood of success on the merits.

### c. Irreparable harm

Additionally, I would deny injunctive relief because the movants have failed to demonstrate a likelihood that they will suffer irreparable harm if their application is not granted. The movants point to several harms that they claim are irreparable.

First, they submit that they will suffer irreparable harm if a TRO is not issued because they "have invested half a million dollars per family through the Regional Center Program in order to have the opportunity to become permanent residents" and "[e]very day the[ir] applications are pending is a day longer the funds must be at risk." (TRO Brief at 22.) In other words, movants contend, until their Forms 1-485, "and subsequently their Form 1-829, Petition by Investor to Remove Conditions on Permanent Resident Status are approved, [their] investments will be exposed to unreasonably prolonged risk." (*Id.* at 22.) Second, the movants submit that if the EB-5 Regional Center Program is not extended, then they will lose their eligibility to obtain a green card through their investments. (*Id.* at 24.) Third, three movants point out that they have yet to receive their Adjustment of Status based Employment Authorization Document (8 C.F.R. § 274.a12(c)(9)), and, therefore, the lack of green card prolongs the period in which they remain in the United States without work or travel authorizations. (TRO Brief at 23.)[8]

---

[8] The other movants have other immigration status that would allow them to remain in the country. (*Id.* at 24.)

Defendants submit that the movants' fear of losing their eligibility to adjust status if the EB-5 Regional Center Program is not reauthorized is speculative. (Opp. at 19-10.) They point out that the EB-5 program periodically expires, but has been renewed more than thirty times, and that legislation has already been proposed to extend the program again. (*Id.* at 20-21.) Further, a prominent industry trade association for the EB-5 program recently stated that it believes the program will be reauthorized. (*Id.* at 21 (citing IIUSA Answers FAQ on EB-5 Reauthorization, available at https://greencardbyinvestment.com/EB5-news/iiusa-faq-reauthorization-2021/)). Defendants add that there have been lapses in the program in the past, during which pending applications were placed on hold. (*Id.* at 21.) After reauthorization, adjudication of those applications simply resumed. *Id.* USCIS represents that it would follow the same or similar procedure if a lapse does occur. (*Id.* (citing the Declaration of Eliel Aguilera (DE 16-3) ¶14.) Finally, defendants submit that there is no guarantee that Plaintiffs' I-485 applications, if adjudicated, would be granted, undermining any claim of irreparable harm if they are not adjudicated before June 30, 2021. (*Id.* at 21-22.)

Defendants have the better argument. Two courts in other districts have assessed substantially similar TRO applications and found that the movants could not demonstrate irreparable harm. *See Nadhar v. Renaud*, No. 21-00275, 2021 WL 2401398, at *4 (D. Ariz. June 11, 2021); *Jain, et al., v. Renaud*, No. 21-CV-03115-VKD, 2021 WL 2458356, at *7 (N.D. Cal. June 16, 2021). In both cases, the movants sought an order compelling USCIS to adjudicate their pending I-526 petitions before EB-5 program is set to expire on June 30, 2021. Both courts noted that there was no guarantee the movants' applications would be granted. Further, both courts found it likely that the program will be renewed as in the past. Moreover, even if the program lapses for some period, USCIS has submitted that it will place the applications on hold during the interregnum, and resume adjudication upon the program's reauthorization. Additionally, the *Jain* court noted that to the extent the movants' investments

have been placed at risk, "this is precisely the kind of economic harm that can be redressed through money damages, and is not, therefore, irreparable." 2021 WL 2458356 at *7; *see also Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989) (Harm is considered "irreparable" if it is not redressable by money damages later, in the ordinary course of litigation). That reasoning is persuasive.

Because the movants have not established the two "gateway factors," substantial likelihood of success on the merits and irreparable harm, I will deny their TRO application. *See Reilly*, 858 F.3d at 179.

### III. Conclusion

For the reasons set forth above, the movants' TRO applications (8712 Action DE 13; 8715 Action DE 12) are DENIED.

An appropriate order follows.

Dated: June 25, 2021

/s/ Kevin McNulty

_____

**Kevin McNulty**
**United States District Judge**